Defendant is engaged in business as a building contractor in the City of Shreveport, Louisiana, and specializes in the erection of frame residences and commercial buildings. Plaintiff issued to him Workmen's Compensation and Public Liability policies to insure him against loss from claims of both characters. The policies were last renewed for one year as of June 25, 1939. They had been in effect for the preceding two years. Premiums under the policies were based upon the aggregate remuneration earned during the policy period by all his employees and the employees of his sub-contractors who were not protected by other insurance. In each of said policies there was fixed an estimated advance premium based upon the estimated total annual remuneration of said employees. The ultimate amount of premiums was to be arrived at by calculations based upon fixed rates per One Hundred ($100) Dollars of the remuneration paid to said employees as fixed in the declarations attached to the policies. This was to be determined by audit of defendant's books and records at the end of each policy period.
Plaintiff became dissatisfied with defendant's manner of keeping a record of his business transactions and affairs, in which it had an interest, and canceled the policies on December 17, 1939. This suit to collect alleged balances due on premiums account, under the policies, from June 25, 1938, to December 17, 1939, was then instituted. It is based upon the theory that defendant's records, tendered to plaintiff's representative for auditing, to determine the balance of premiums due, do not correctly reflect his pay rolls nor the amounts paid his employees during the policy period. It is alleged and contended that if the correct facts were disclosed by defendant he would owe a balance of several hundred dollars, estimated differently in original and amended petitions.
Defendant denies that he owes plaintiff any amount on premium account, but, on the contrary, avers that he is due a return of $124.38 for unearned premiums, and, by way of reconvention, prays for judgment against plaintiff for this amount. He avers the fairness of his dealings with plaintiff and the correctness of the records and accounts submitted to its auditor.
Plaintiff's demand was rejected and its suit dismissed. No mention was made in the judgment of the reconventional demand. It follows that it was also rejected. In brief plaintiff's counsel say that the trial judge, in oral reasons for judgment, stated that he felt certain defendant was due plaintiff an amount on premium account, not definitely proven, equal to or in excess of the amount claimed in reconvention, and for that reason refused to give judgment therefor.
Plaintiff appealed to this court. Defendant, answering the appeal, renewed its demand in reconvention.
This is the second appeal to this court in this case. It was first appealed from a judgment of dismissal on the ground that plaintiff did not fully comply with the court's order sustaining a motion for a bill of particulars with right to amend. The judgment was reversed and the case remanded for further proceedings. 5 So.2d 343.
The case is now before us on the merits.
Under the terms of the policies defendant was obligated at the end of each month from the date of the policy to "furnish the Corporation (plaintiff) with a written statement showing the actual amount of remuneration earned by employees during that period and will within ten days after the expiration of each such period, pay to the Corporation (plaintiff) a premium computed at the rate or rates specified in the schedule of the Policy for each One Hundred ($100.00) Dollars of such remuneration." The policy also provides that:
"The Corporation shall be permitted, at all reasonable times during the Policy Period, to inspect the plants, works, machinery *Page 646 
and appliances covered by this Policy, and to examine this Employer's books at any time during the Policy Period, and any extension thereof, and within one year after its final expiration, so far as they relate to the remuneration earned by any employees of this Employer while this Policy was in force."
In keeping with the policy provision defendant monthly furnished plaintiff with a list of his employees and the amount paid each on wage account and premiums were computed and paid accordingly. But plaintiff now challenges the correctness of the monthly lists and has sought by circumstantial and indirect evidence to substantiate the challenge. We think it has measurably succeeded. Defendant characterizes plaintiff's suit as merely a "fishing expedition".
It appears that after the expiration of the first policy, issued by plaintiff to defendant in June, 1937, plaintiff's auditor called on defendant to audit his books and records and he did so. Settlement was had upon this audit as a basis. However, the auditor testified that he then informed defendant that his system of records and bookkeeping was inadequate and that he would be expected to install and maintain an up-to-date system so that the relative rights of insurer and insured could be determined by audit at any time during the existence of the policies and for a definite period thereafter. The auditor did not report to plaintiff the condition in which he found defendant's records, and, as a consequence, the policy was renewed for a year in June, 1939. Thereafter, said auditor undertook an audit of defendant's records and accounts to determine what amount, if any, he was due on premium account and found his business system the same as it was in 1938. Some heated discussions ensued which evidently led to the cancellation of the policies.
The only records furnished to the auditor were work sheets containing the names of the various workmen, the kind of work each performed and the wages paid each during the period from June 25, 1938, to June 25, 1939. Some of these workmen were designated as having worked for subcontractors. The work sheets were in reality pages taken from a scratch pad. The auditor made copies of them. The labor was not so segregated that one could tell how much time each workman labored on a particular job. The foreman, who kept the time of the workmen, testified that he did so in a small book which was turned over to defendant on Friday of each week and after serving his purpose, the book would be returned to the foreman; that the time of each workman was accredited to him without reference to the particular job at which he worked.
Defendant's stenographer who entered his employ in August, 1939, and who was therein when the case was tried, testified that defendant maintained no bookkeeping system worthy of the name until January 1940.
The foregoing epitome of testimony embraces all that was introduced which throws any light upon defendant's records. The conclusion is reached that he disclosed to plaintiff's auditor such records as were kept by him to meet, in whole or part, the requirements of the policy provision. Whether these records are correct or incorrect or were purposely built up to reflect untrue conditions, defendant, perhaps, is the only person who definitely knows.
Defendant's records show that for the period from June 25, 1938, to June 25, 1939, his carpentry pay roll amounted to $5,244.60; his brick masonry pay roll was $432; his painting pay roll amounted to $388.50, and clerical remuneration totaled $1,200, all of which outlays he reported to plaintiff and on the basis of which he paid the proper monthly premiums.
In its effort to refute the alleged correctness of these asserted payments on labor and clerical accounts, plaintiff points to the fact that for the period between June 25, 1938, and December 17, 1939, defendant procured thirty-four (34) building permits from the City of Shreveport to erect or repair for different persons that number of buildings, nearly all being frame residences, at a total estimated cost of $146,350. From these facts it is strenuously contended that the carpentry pay roll alone must have been far in excess of the amount reported by defendant.
Plaintiff sought to prove that the cost of labor required to erect a frame building, particularly a residence, costing around $5,000, was in excess of twenty per cent (20%) of the total cost of the structure, but this percentage includes labor other than carpentry which is done mostly by sub-contractors. Defendant's own witnesses testified that the cost of carpentry in a residence costing around $5,000 would be approximately ten per cent (10%) of *Page 647 
such cost, dependent upon different conditions.
Now, when we consider this testimony in the light of the volume of construction done by defendant from June 25, 1938, to December 17, 1939, being the sum of $146,350, it becomes obvious that his carpentry bills even to June 25, 1939, were far in excess of $5,244.60, and much more to December 17, 1939.
The average cost of the buildings, based upon the amounts declared in applications for permits, is $4,300. There were thirty-four (34) different projects. The average carpentry cost, on the basis of testimony of defendant's own witnesses, was at least $400 per building. Therefore, defendant must have paid out as much as $13,600 on carpentry account alone to December 17, 1939. The premium rate on carpentry expenses, under the Workmen's Compensation Policy, is fixed at 5.36 per hundred dollars, and under the Public Liability Policies the rate is fixed at .23 per hundred dollars. Therefore, the total of premiums due under both policies on this basis of calculation is $760.24, against which defendant is entitled to a credit of $447.75, leaving a balance due by him of $312.49. The testimony warrants judgment for this amount. It is, however, insufficient in probative weight to serve as a basis for judgment for any amount in excess of this sum.
Testimony was introduced to prove that the declared cost of a building as a condition precedent to procuring a permit from the City, generally is inaccurate. It is clearly shown that such estimates are almost invariably below the actual cost of the building. For this reason we feel safe in adopting the values declared by defendant prior to procuring building permits as a safe predicate to fix liability herein.
For the reasons herein assigned, the judgment appealed from is reversed and it is now ordered, adjudged and decreed that plaintiff, American Employers' Insurance Company of Boston, Massachusetts, do have and recover judgment against the defendant, D.O. Furr, in the sum of Three Hundred Twelve and 49/100 ($312.49) Dollars, with legal interest thereon from judicial demand, and for all costs of this suit.
 On Application for Rehearing.